UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ALANA OLDENBURG AND** | § | |
| **DEBRAH FIELDS,** | § | |
| *Plaintiffs* | § | |
| | § | **Case No. 1:18-CV-968-LY** |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **AUSTIN AND PRESIDENT** | § | |
| **GREGORY L. FENVES, IN HIS** | § | |
| **OFFICIAL CAPACITY,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Summary Judgment, filed on February 28, 2020 (Dkt. 16); Plaintiffs' Response, filed on March 13, 2020 (Dkt. 17); and Defendant's Reply,[1] filed on March 27, 2020 (Dkt. 18). On March 31, 2020, the District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.   Background

On October 11, 2018, Plaintiffs Alana Oldenburg and Debrah Fields filed this employment discrimination lawsuit against Defendants The University of Texas at Austin ("UT") and its President, Gregory Fenves, alleging claims under the Age Discrimination in Employment Act of

---

[1] Defendant's Reply includes a motion to strike Plaintiffs' "Statement of Facts" in Dkt. 17-1 because it is essentially an additional brief that exceeds the Court's page limit for response briefing. The Court did not rely on the "Statement of Facts" in Dkt. 17-1.

1967 ("ADEA"), 29 U.S.C. § 621, and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.001 et seq.

Fields worked in the Facilities Services Training ("FST") department at UT from 2007 to 2017. In late 2013, Fields assisted her coworker, Ralph Sneed, in preparing an Equal Employment Opportunity Commission ("EEOC") charge of employment discrimination against UT. After Fields notified her managers of her participation in Sneed's EEOC charge, Fields alleges, she began experiencing retaliation in the workplace, including false allegations of misconduct, a decrease in responsibilities, scrutiny over her leave time, and micromanagement from supervisors. Fields filed a grievance with UT's Office of Institutional Equity in October 2014, but claims that UT's alleged mistreatment continued through the beginning of 2016.

In early 2016, FST underwent multiple personnel changes. Eventually, the chain of command in FST included Dean Hansen as Director, Debbie DiMeo as Assistant Director, Darlene Green as Training Manager, and Fields as Training Specialist III. Fields alleges that retaliation resumed in late 2016, including false allegations of misconduct, rude treatment from management in front of coworkers, being denied access to office equipment that other employees received, and being denied additional job-related training.

Fields claims to have discussed with DiMeo in October 2016 her concerns that DiMeo and Green were mistreating her in retaliation for participating in Sneed's EEOC charge in 2013. However, she did not file a grievance with UT's Office of Institutional Equity or any other type of formal complaint.

In mid-2016, DiMeo and Hansen began planning to restructure the FST department, including by eliminating Fields' position (Training Specialist III) through a Reduction in Force ("RIF"). Additionally, as part of the reorganization, DiMeo created a job posting to fill an opening for the

Training Manager position. DiMeo expected that the Training Manager would be heavily involved in restructuring the department.

DiMeo received 102 applications for the Training Manager position. She narrowed the pool of applicants to fourteen, and a small hiring committee selected six candidates for first-round interviews. Plaintiff Oldenburg was among the candidates selected for an interview. During the first-round interviews, the hiring committee asked sixteen standardized questions to each applicant and scored each question between zero and three. After the first-round interviews, the hiring committee narrowed the pool to three candidates, Oldenburg (then 64 years old), Aimee Trochio (then 45 years old), and Stacy Scott (then 47 years old). DiMeo invited each of them to a second interview, in which each candidate gave a presentation based on the projected new direction of the FST department. Ten members of Facilities Services who would occasionally work with the Training Manager participated, including Hansen, DiMeo, Fields, Staci Pope, Stephanie Perrone, and Jim Carse.

In discussion after the final presentation, the staff members reached consensus that Scott was not well-suited for the job; Oldenburg was well-qualified but might not be the best fit; and Trochio was preferred because she was then in a similar role at UT in which she was developing web-based and in-person training. The staff agreed that Oldenburg's experience was primarily in higher management of a larger training team, not developing training programs with only one other teammate. Additionally, Trochio had prior experience training tradespeople, while Oldenburg seemed to have experience mainly training executives and professionals.

During the discussion about the candidates, a few staff members made comments that Fields believed were age-biased. After the large group discussion, the group disbanded, leaving DiMeo, Hansen, Pope, and Perrone to discuss the candidates further. Eventually, DiMeo made the ultimate

decision to offer the position to Trochio, with Oldenburg as runner-up in the event negotiation with Trochio failed. Trochio accepted the position and began work at UT on May 23, 2017.

UT delivered a Reorganization Notification to Fields on May 11, 2017, and notified her that UT was eliminating her position. Her last official day with UT would be July 10, 2017, but she would no longer report to the office. Her last day in the office was May 11, 2017.

Fields filed a grievance with UT's Office of Institutional Equity, alleging that she was terminated in retaliation for speaking out against age-based discrimination she observed after Oldenburg's interview. Additionally, Fields contacted Oldenburg and explained to her that Fields believed UT engaged in age-based discrimination during Oldenburg's hiring process.

By mid-2017, DiMeo and Trochio had developed a description of the Instructional Designer/Curriculum Developer position, which replaced the Training Manager III position, and began accepting applications. Fields applied for the position, but UT determined that she was not qualified because she did not have a master's degree and lacked the necessary experience.

Oldenburg and Fields each filed EEOC charges of discrimination and retaliation. The EEOC issued Right to Sue letters to both. Plaintiffs sued UT in Texas state court for violations of the ADEA and the TCHRA. UT removed the action to this Court based on federal question jurisdiction and now seeks summary judgment on all claims.

## II.    Legal Standard for Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

The Court considers Oldenburg's discrimination claims first, then turns to Fields' retaliation claim.

### A.  Oldenburg's Discrimination Claims

Oldenburg alleges that UT violated the ADEA and TCHRA by engaging in age-based discrimination in the hiring process for the Training Manager position. In its Motion for Summary

Judgment, UT argues that Oldenburg has failed to submit sufficient evidence to create a genuine dispute as to any material fact related to Oldenburg's employment discrimination claims.

### 1. Legal Standards for the ADEA and TCHRA

The ADEA provides judicial relief for discriminatory employment practices based on age. 29 U.S.C. § 626(c). To establish a prima facie case of age discrimination on a failure to hire theory, Plaintiff must show that (1) the plaintiff was in the age group the ADEA protects, (2) she was qualified for the job applied for, (3) she was rejected for the job despite her qualifications, and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013). To succeed in an ADEA discrimination case, the plaintiff must show that "age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

At the summary judgment phase, discrimination claims under the ADEA use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). Under the *McDonnell Douglas* framework, if the plaintiff can present a prima facie case, the burden shifts to the defendant to rebut the plaintiff's case by articulating a legitimate, nondiscriminatory justification for its actions. *McMichael*, 934 F.3d at 456. If the defendant offers such a justification, the burden shifts back to the plaintiff to produce sufficient evidence to show that the defendant's given reason is pretext for discrimination. *Id.* To show pretext, the plaintiff must put forward substantial evidence to rebut each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). At all stages of the *McDonnell Douglas* analysis, the burden of persuasion remains on the plaintiff; the burden on the defendant in the second step is merely a burden of production. *Black v. PanAmerican Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011).

As for the TCHRA claim, the Texas Supreme Court has consistently held that because the TCHRA is meant to provide similar protections as Title VII and the analogous federal statutes, including the ADEA, the Court uses the same analysis framework used by courts interpreting federal anti-discrimination statutes. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012)). Thus, the elements of an age discrimination case under the ADEA also apply to the TCHRA. *See id.* Where, as here, the plaintiff relies on circumstantial evidence, "Texas courts apply the familiar *McDonnell Douglas* burden-shifting framework to age-discrimination claims under the TCHRA." *Id.* Texas law departs from federal law in the final step of the *McDonnell Douglas* analysis, however, as Texas allows the plaintiff to show pretext by presenting evidence of a mixed motive, as opposed to the federal but-for causation requirement. *Id.*

## 2. Plaintiff Has Not Shown Pretext

Oldenburg alleges that UT engaged in age-based discrimination when it refused to hire her in the Training Manager role and instead offered the position to Trochio, a candidate nearly twenty years younger. UT submits that it did not choose Trochio over Oldenburg based on age, but because Trochio was better suited for the position. UT does not dispute that Oldenburg has alleged a prima facie case of age-based discrimination. UT argues, however, that Oldenburg has failed to submit sufficient evidence to prove that its nondiscriminatory reason for not hiring Oldenburg— i.e., that Trochio was a better fit for the position—was pretext for discrimination.

Oldenburg makes three arguments to support her pretext argument. First, she contends that UT employees made negative, age-based remarks about her during the interview process. Next, she argues that she was better qualified for the position. Finally, she submits that UT's departure from its standard hiring procedures is proof of discriminatory intent. UT contends that Oldenburg has failed to proffer evidence to raise a fact issue as to any of her arguments.

### a.    Age-Based Remarks

Oldenburg's primary argument is that certain UT employees made negative, age-based comments in a hiring committee meeting and those comments are evidence that UT's nondiscriminatory explanation for its hiring decision is pretextual. A plaintiff may establish pretext by proving age-biased comments, but "mere 'stray remarks' such as 'a younger person could do faster work' or calling an employee an 'old fart' have been held to be insufficient to establish discrimination." *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997). Age-based statements would be sufficient to show age discrimination "if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010). Statements evince unlawful discrimination only if the comments "first, demonstrate discriminatory animus and, second, are made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 351 (5th Cir. 2007) (cleaned up).

To demonstrate that age-based statements are probative of UT's discriminatory intent, Oldenburg must show that the statements were "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Oldenburg alleges that UT employees uttered many potentially age-biased remarks, including that her methods were "old school," that UT needed someone with "fresh eyes," and that the right person for the job would be willing to "get their hands dirty" and "build something from the ground up." Dkt. 17 at 6. The Court finds these remarks too ambiguous to prove discriminatory intent. *See Price*, 119 F.3d at 337; *EEOC,* 100 F.3d at 1181.

Oldenburg alleges that staff member Carse made a few statements that a trier of fact could deem age-biased, including that he couldn't remember much about Oldenburg's presentation except that she was older than the others and that she was approximately 62 years old. Dkt. 17-3 at 41. The Court finds these statements to be "stray remarks" insufficient to show pretext because Carse was not the ultimate decision-maker or a person with influence or leverage over the formal decision-maker. *See Moss,* 610 F.3d at 929. UT submits, and Fields' deposition supports, that the ultimate decision-maker was DiMeo. While Carse participated in the hiring committee meeting after the second round of interviews, DiMeo made the ultimate decision to hire Trochio over Oldenburg during a meeting consisting of only four UT employees: DiMeo, Hanson, Pope, and Perrone. Dkt. 16 at 5 n.5.

The Fifth Circuit routinely holds that, to succeed on an ADEA claim, stray remarks cannot be the sole proof of age discrimination. *Moss*, 610 F.3d at 929; *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015). Oldenburg has failed to offer any evidence of age bias aside from these stray remarks, which alone are insufficient to show pretext under either the ADEA's but-for standard or the TCHRA's mixed-motive standard. *Id.*

### b.   Oldenburg's Qualifications

Next, Oldenburg attempts to show pretext by arguing that she was better qualified for the Training Manager position. To establish a fact question based on candidates' relative qualifications, a plaintiff must "present evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss*, 610 F.3d at 923. The plaintiff must provide sufficiently specific reasons for her opinion; mere subjective speculation will not suffice. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

Although work experience is one component in determining which candidate is more qualified for a position, it is not persuasive to attempt to equate years served with superior qualifications. *Id.* In *Moss*, for instance, the plaintiff and the person who was hired both met the basic skills and education requirements for the job; each had a J.D. from an accredited law school, five or more years of relevant experience, and advanced communication, leadership, and project management skills. *Moss*, 610 F.3d at 923. The plaintiff had fourteen years of experience, while his competitor had only five. *Id.* The employer ultimately hired the younger competitor. *Id.* The Fifth Circuit upheld the district court's finding that the younger competitor's direct experience in several key aspects of the job rendered him more qualified than the plaintiff, who did not have as much direct experience in those aspects. *Id.* at 923-26. Due to the plaintiff's inexperience in key aspects of the job, the Fifth Circuit agreed that the plaintiff could not show that he was "clearly better qualified" than the competitor. *Id.* at 926.

Similarly here, both candidates met the minimum requirements for the position, including a bachelor's degree in a related field and "five years of experience developing and managing a training program for a medium to large organization and for a diverse group of employees including trades, administrative, professional and management level staff." Defendant's Appendix, Dkt. 16-1 at 150-51 (Training Manager job posting), 155-56 (Oldenburg Resume), 190-91 (Trochio Resume). Both candidates also held master's degrees. DiMeo testified that Trochio's experience training tradespeople and creating web-based training using e-learning authoring tools better suited her for the Training Manager position. Dkt. 17-5, 185:8-188:2. "The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988).

Oldenburg has not submitted evidence sufficient to determine that no reasonable employer would have chosen Trochio for the job. Therefore, she has failed to raise a fact issue as to whether UT's given reason for hiring Trochio was pretext for discrimination under either the ADEA but-for standard or the TCHRA mixed-motive standard.

### c.      Departure from Standard Hiring Procedure

Finally, Oldenburg argues that UT's departure from its standard hiring procedure is evidence of pretext. A plaintiff can demonstrate pretext by showing that the employer departed from a standard procedure in making the adverse employment decision. Mere deviations from policy or a disagreement about how to apply company policy, however, do not show pretext. *McMichael*, 934 F.3d at 459. To succeed in a departure-from-procedure argument, a plaintiff must show a connection between the departure from procedure and a discriminatory motive. *Id.*

Oldenburg has failed to create a genuine issue of material fact that any of UT's alleged departures from its hiring procedures were connected to a discriminatory motive. In the second round of interviews, the three finalists were asked to give presentations. Dkt. 16 at 4-5. DiMeo explained that this format, rather than a standardized hiring questionnaire, was used to help determine the candidate's fit in the department and ability to communicate with a senior leadership team. Dkt. 17-5, 184:17-185:5. Oldenburg has proffered no evidence to show that DiMeo had a discriminatory motive in the way she structured the second-round interviews. Oldenburg has not established that any departure by UT from its hiring guidelines was a pretext for discrimination under either the ADEA but-for standard or the TCHRA mixed-motive standard. *See McMichael*, 934 F.3d at 459. In addition, discrimination is less likely when the decision maker is in the same protected class as the plaintiff. *McMichael*, 934 F.3d at 460. Here, DiMeo, the ultimate decision maker, was 59 years old and, like Oldenburg, in the age group protected by the ADEA.

### 3. Conclusion as to Oldenburg's Discrimination Claims

Based on the foregoing, Oldenburg has not alleged sufficient facts to support her employment discrimination claims under the ADEA and the TCHRA. Accordingly, Defendant's Motion for Summary Judgment should be granted as to Oldenburg's discrimination claims.

## B. Fields' Retaliation Claim

Fields alleges that she suffered adverse employment actions due to UT's retaliation against her for participating in protected activities under the ADEA and the TCHRA. In its Motion for Summary Judgment, UT argues that Fields has failed to submit sufficient evidence to create a genuine dispute as to any material fact related to her retaliation claim. UT contends that Fields failed to establish a prima facie case of retaliation. In the alternative, UT argues that if Fields did establish a prima facie case, her argument fails by failing to show pretext.

### 1. Legal Standard for Retaliation

To establish a prima facie case of retaliation under the ADEA, the plaintiff must show that (1) she participated in an activity protected by the ADEA; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). At the summary judgment phase, retaliation claims under the ADEA use the *McDonnell Douglas* burden-shifting framework. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998).

To establish the causal connection required for a prima facie case, the plaintiff must show "that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Id.* at 1122-23. To succeed on a retaliation claim, the plaintiff must show but-for causation between the protected activity and the adverse employment action. *Id.* at 1123; *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir. 1984).

It is well-established that the temporal proximity between the protected activity and the adverse employment action must be "very close" to demonstrate the required causal connection between the two. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (twenty months too attenuated); *Heggemeier*, 826 F.3d at 870 (twenty-one months too attenuated); *cf. Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42-43 (5th Cir. 1992) (fourteen months sufficient for causal connection when termination came only two months after EEOC dismissed discrimination charge).

### 2. Analysis

UT admits that Fields' termination is an adverse employment action, but argues that Fields fails to make out a prima facie case of discrimination because her termination was not temporally connected to the protected activities in which she engaged. Fields alleges three instances of protected activity: aiding Sneed in an EEOC charge in 2013; orally complaining to DiMeo that she was retaliated against for the protected activity of aiding Sneed; and speaking out against potential age-based discrimination during a hiring committee meeting related to Oldenburg's interview. Fields essentially poses three categories of alleged retaliation by UT: adverse treatment by supervisors and coworkers from 2014 to 2016, adverse treatment related to the Sneed issue in late 2016, and her termination in 2017.

### a.   Adverse Treatment from 2014 to Early 2016

Discriminatory acts that occurred more than 300 days before a plaintiff's EEOC charge are not actionable under the ADEA, even if they are related to acts alleged in a timely filed EEOC charge. 29 U.S.C. § 626(d); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002). Fields filed her EEOC charge on August 27, 2017. The parties agree that any discrete discriminatory acts that occurred before October 31, 2016, are not actionable. Dkt. 16 at 13; Dkt. 16-1 at 10. All allegedly retaliatory actions about which Fields complains that "began in 2014 and subsided in early-2016" are not subject to review by this Court.

### b.      Adverse Treatment in Late 2016

With respect to Sneed, Fields alleges that UT staff, including Green, DiMeo, and Hansen, resumed a course of retaliatory behavior against her in "late-2016." Fields' participation in Sneed's EEOC charge in 2013 and the alleged discrimination in late 2016 is too attenuated to satisfy the causal connection element of her prima facie case. Even if UT's actions were discriminatory, Fields cannot recover because she has failed to establish the required causal connection between her protected activities in 2013 and the mistreatment she allegedly suffered three years later. *See Clark Cty. Sch. Dist.,* 532 U.S. at 273; *Heggemeier*, 826 F.3d at 870; *Leal*, 731 F.3d at 417.

### c.      Termination in 2017

Finally, Fields argues that she engaged in protected activity on April 28, 2017, when she spoke out against potential age-based discrimination in a hiring committee meeting related to the Training Manager position. Fields claims that Carse, a member of the ten-person committee, made negative, age-based comments about Oldenburg during the committee meeting, to which Fields responded: "[Y]ou cannot talk about age." Dkt. 17-3, 233:4-5. A few weeks after the incident, UT notified Fields that she was being laid off due to a RIF.

Fields contends that her comment constitutes protected activity under the ADEA and her termination was retaliation. UT contends that the plan to eliminate Fields' position through a RIF, due to the reorganization of the FST department, originated before the committee meeting at which Fields made the alleged comment. Dkt. 16 at 3. UT submitted a Reduction in Staff Memo dated April 6, 2017, and DiMeo testified that it received final approval on April 25, 2017, showing that a plan to eliminate Fields' position had been approved before the hiring committee meeting on April 28, 2017. Dkt. 16-1 at 33 ¶¶ 7, 39, 145. Thus, no causal connection exists between Fields' termination and her comments in the hiring committee meeting. *See Sherrod,* 132 F.3d at 1121-22

(holding plaintiff must show "that the employer's decision to terminate was based in part on knowledge of the employee's protected activity").

Because Fields has failed to establish the required causal connection between any protected activity and an adverse employment action, she has not made out a prime facie case of retaliation. The Court need not proceed through the remainder of the *McDonnell Douglas* analysis.

### 3.  Conclusion as to Fields' Retaliation Claims

Fields has not alleged sufficient facts to support her retaliation claims under ADEA and the TCHRA.[2] Accordingly, Defendant's Motion for Summary Judgment on these claims should be granted.

### IV.    Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Dkt. 16).

**IT IS FURTHER ORDERED** that that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

### V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

---

[2] To the extent that Fields argues she should have been hired for, or trained and reassigned to, the Instructional Designer/Curriculum Developer position, and UT's refusal to place her in that position constituted a retaliatory adverse employment action, Fields misses the mark. To establish that an employer's hiring decision as to a certain employee was discriminatory, the plaintiff must show that she was qualified for the position she sought. *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001). UT argues, and Fields' own deposition testimony supports, that she was not qualified for the position because she lacked the requisite educational background and on-the-job experience. Dkt. 16 at 7; Dkt. 16-1 at 328, 54:2-4 and 359, 192:19-193:1.

objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusios accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 22, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE